# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **USA DRIVER SYSTEMS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.  ) | **Case No.: 1:07-CV-344-VEH** |
| ) | |
| **DRIVING FORCE OF ALABAMA,** ) | |
| **L.L.C., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## **MEMORANDUM OPINION**

This matter comes before the court on Defendants' Motion to Dismiss Counts I, II, and V of the Plaintiff's Complaint (doc. 19).[1]  In an Order entered on March 9, 2007, the court, pursuant to FED. R. CIV. P. 12(b), converted Defendants' Motion to Dismiss to a Motion for Summary Judgment and permitted Plaintiff an opportunity to respond to the motion within 10 days.  This matter has been fully briefed, and the Motion is now under submission.  For the reasons stated herein, the Motion is due to be **GRANTED** as to Counts I and II and **DENIED** as to Count V.

---

[1] The court notes that there are two counts numbered "Count IV" in Plaintiff's Verified Complaint.  The court has previously stated that it treats Plaintiff's civil conspiracy claim as being "Count V."  Defendants' Motion to Dismiss uses "Count IV" and "Count V" interchangeably.  It is clear to the court, based on the style of the motion and the arguments asserted therein, that Defendants are, at this time, seeking dismissal of Plaintiff's civil conspiracy claim (Count V).

I.      **Facts and Procedural History**[2]

Plaintiff USA Driver Systems, Inc. ("Plaintiff") is a Georgia corporation that is engaged in the business of supplying temporary and permanent truck drivers to various commercial customers who contact Plaintiff for those services.[3]  Plaintiff has locations in Georgia, Alabama, and Indiana.  Its Birmingham, Alabama, location has been open for approximately ten years.  As a driver staffing company, Plaintiff provides full-time and part-time truck drivers to commercial customers who need drivers to transport goods and materials.  In the normal course of business, Plaintiff provides complete Department of Transportation ("D.O.T.") files for its drivers, carries workers' compensation insurance, handles unemployment claims, and offers additional "benefits" to its commercial customers in order to make its driver staffing business more appealing to those customers.  (Compl., ¶ 7).

Plaintiff asserts that "[d]river staffing is a highly competitive business ...." (Compl., ¶ 8).  In an effort to remain competitive, Plaintiff "has developed a substantial body of information relating to customers, prospective customers,

---

[2] If the facts are in dispute, they are stated in the manner most favorable to the non-moving party. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 at 1115 (11th Cir. 1993). These are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[3] This business is commonly known as "driver staffing."

employees, and internal operations, such as customer and employee lists and contact information, rate schedules, sales records, customer preferences, and operational information concerning training, policies and procedures associated with running an effective and successful driver-staffing business." (*Id.*).  Plaintiff contends that this information is "confidential" in that "if disclosed to or obtained by a competitor [such disclosure] would permit the competitor to compete unfairly against USA ...." (Compl., ¶ 9).  Because of the time and efforts invested by Plaintiff in compiling this information, Plaintiff claims that is "has developed a sophisticated driver-staffing business operation in which it has a legitimate and protectible interest."  (Compl., ¶ 10).

Defendant Driving Force of Alabama, LLC ("Driving Force") is an Alabama company that is also engaged in the business of driver staffing.  Upon the Plaintiff's information and belief, Driving Force was organized under the laws of the State of Alabama on or about January 16, 2007, and is currently an operating business that is in direct competition with Plaintiff.  Plaintiff avers that Driving Force utilizes, in the operation of its business, the Individual Defendants' training and experience gained while those Individual Defendants were employees of Plaintiff as well as manuals, applications, contracts, and other materials that were allegedly misappropriated from Plaintiff by the Individual Defendants.

Individual Defendants Linda Hocutt and Renea Bearden were each formerly employed by Plaintiff as office administrators at Plaintiff's Birmingham, Alabama, facility.[4]  As office administrators, the Individual Defendants were given access to Plaintiff's customer lists and other information which Plaintiff claims is confidential. The Individual Defendants' duties included hiring, recruiting, and dispatching truck drivers, as well as interacting with and soliciting business from customers.  Plaintiff avers that, as a result of their employment with Plaintiff, the Individual Defendants "developed relationships with [USA Driver's] employees and customers that [they] would otherwise not have developed, and had access to proprietary and confidential information and business materials to which [they] otherwise would not have had access."  (Compl., ¶¶ 12, 14).

Plaintiff alleges that,

> [a]t or near their hire dates and in consideration of their employments with USA Driver, Hocutt and Bearden each signed Employment Agreements and Confidential Information Agreements (the "Agreements") containing certain restrictive covenants that were in effect during each of their employments, and that survive for specified periods of time following the separation of their employments.  The Employment Agreements also were signed and acknowledged by Christine Shelburn, an authorized USA Driver management official.

(Compl., ¶ 16).  Specifically, with respect to the Employment Agreements and

---

[4]Plaintiffs claim that Renea Bearden is also known as Renea Helms or Renea Helms Bearden.

Confidential Information Agreements[5], Plaintiff contends,

> In their Employment Agreements, the Individual Defendants agreed, on Page 1 under the <u>Non-Disclosure of Confidential Information</u> heading, that during their employments and for a period of two (2) years thereafter, they would not use or disclose any of Plaintiff's confidential information, including but not limited to customer and supplier lists and contacts, cost and pricing data, and information concerning operations, procedures, methods, and training.
>
> Similarly, in their Confidential Information Agreements, the Individual Defendants agreed not to use or disclose USA Driver's trade secrets and confidential information, and to return to Plaintiff all USA Driver documents and information promptly upon the termination of their employments.
>
> In their Employment Agreements, Hocutt and Bearden each agreed, on Page 1 under the <u>Return of Company Property</u> heading, that they would return all USA Driver property back to the company upon the termination of their employments, including but not limited to customer lists, contract forms, equipment, supplies, and all confidential information, and including all copies and duplicates thereof.
>
> In their Employment Agreements, Hocutt and Bearden each agreed, on Page 2 under the <u>Non-Solicitation</u> heading, that during their respective employments and for a period of two (2) years thereafter, they would refrain from soliciting any customers or potential customers of USA Driver with whom they had had contact in the last twelve months of their respective employments with Plaintiff for the purpose of causing such customer to do business with another entity. In the same section, the Individual Defendants each agreed, during their respective employments and for a period of two (2) years thereafter, not to solicit or divert any employee or independent contractor of USA Driver for the purpose of causing such employee or contractor to leave employment or terminate a contractual relationship with Plaintiff.

---

[5]All of which were signed in Birmingham, Alabama.

> In their Employment Agreements, Hocutt and Bearden each agreed, on Page 2 under the <u>Non-Competition</u> heading, that during their respective employments and for a period of one (1) year thereafter, they would refrain from recruiting, hiring, or dispatching truck drivers in the State of Alabama.

(Compl., ¶¶ 17-21). Furthermore, Plaintiff alleges that the Individual Defendants "acknowledged and agreed in their Employment Agreements ... that [Plaintiff] would not have an adequate remedy at law in the event they violated the covenants contained therein, and that [Plaintiff] would be entitled to seek immediate injunctive relief and other equitable relief for breach of the Agreements." (Compl., ¶ 22).

According to Plaintiff, beginning in December 2006, it became aware that the Individual Defendants were soliciting Plaintiff's employees and customers on behalf of the Corporate Defendant. Plaintiff alleges that the employment manual, employment application, and "other employment paperwork" used by the Corporate Defendant are "near-identical, word-for-word copies of similar manuals, applications, and documents to which Hocutt and Bearden had access as a result of their employments with Plaintiff." (Compl., ¶ 29). Plaintiff further alleges that the Defendants have mailed to Plaintiff's customers certain contracts and other service paperwork "that are word-for-word derivations of Plaintiff's own business documents and property." (Compl., ¶ 34).

Also, Plaintiff avers that,

> shortly before the Individual Defendants' employments ended, Ed Schmanski, President of USA Driver Systems, and Christine Shelburn, Manager of Plaintiff's Birmingham office, met in Birmingham with the Individual Defendants to discuss a new logo design and branding strategy for USA Driver Systems. At that meeting, the Individual Defendants were shown a new logo design for Plaintiff to be used as part of that marketing and branding strategy. Driving Force's logo bears a marked similarity to many aspects of the design that was shared with the Individual Defendants. Accordingly, based upon information and belief, Plaintiff avers that the Individual Defendants have misappropriated the design revealed to them during and pursuant to their employments with Plaintiff, and they and/or Driving Force have adapted it for use by Defendants.

(Compl., ¶ 35).

According to Plaintiff, it made several contacts with the Defendants in an effort to resolve this dispute prior to filing this lawsuit. On February 22, 2007, Plaintiff filed a Verified Complaint (doc. 1) with this court asserting claims for: (1) breach of contract (Individual Defendants); (2) tortious interference with contractual relations (Corporate Defendant); (3) violations of the Alabama Trade Secrets Act (all Defendants); (4) conversion of Plaintiff's property and confidential business information (all Defendants); and (5) conspiracy to engage in unfair competition and other unlawful acts (all Defendants). Contemporaneous with the filing of the complaint, Plaintiff filed a motion for a temporary restraining order and for

preliminary injunction.

On March 5, 2007, the court conducted a hearing on Plaintiff's Motion for a Temporary Restraining Order. At that hearing, Defendants presented evidence that Plaintiff was not registered with the Alabama Secretary of State. The Motion for a Temporary Restraining Order was denied by a separate Order on that same day. On March 6, 2007, Defendants filed the instant motion.

## II.   Standard of Review

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and

admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such

9

a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence

sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

### III.  Discussion

Defendants contend that, as Plaintiff is a foreign corporation that is not qualified to conduct business in the State of Alabama, the contracts that form the foundation of Counts I, II, and V are void pursuant to Ala. Code 1975 § 10-2B-15.02(a). As such, Defendants assert that those counts are due to be dismissed with prejudice. Ala. Code 1975 § 10-2B-15.02(a) states,

> A foreign corporation transacting business in this state without a certificate of authority or without complying with Chapter 14A of Title 40 may not maintain a proceeding in this state without a certificate of authority. All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a certificate of authority to transact business in this state shall be held void at the action of the foreign corporation or by any person claiming through or under the foreign corporation by virtue of the contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity.

This "door closing" statute has been recognized as being penal in nature and is to be strictly construed. *See New Concept Industries Inc. v. Green*, 646 F. Supp.

1077, 1078 (M.D. Ala. 1986).

Plaintiff is a Georgia corporation that regularly conducts business in the State of Alabama. Plaintiff maintains an office in Birmingham, Alabama. Plaintiff concedes that it did not possess a Certificate of Authority issued by the Alabama Secretary of State until March 12, 2007. (Plaintiff's Supplemental Submission in Opposition to Defendants' Motion to Dismiss, p. 2; Plaintiff's Ex. A). As such, Plaintiff was not qualified to do business in Alabama until that date. Plaintiff then argues that, while a foreign corporation generally cannot bring a "contract claim" without having qualified to do business in Alabama, the contract claims in this case should be permitted under the last clause of § 10-2B-15.02(a) which states, "he who seeks equity must do equity." (*Id.*).

In strictly construing § 10-2B-15.02(a), as the court must, and in light of Plaintiff's concession that it was not qualified to conduct business in the State of Alabama when the contracts at issue were executed, the contracts entered into by the Plaintiff and the Individual Defendants are void as a matter of law.

The court, in reviewing the cases cited by Plaintiff and on its own inquiry, finds that the case at bar does not present a situation where utilization of the equity exception in § 10-2B-15.02(a) is appropriate. Each of the cases cited by the Plaintiff is factually distinguishable from the instant case. In addition, the court could not find

any case in which an Alabama court exercised the equity exception in a situation where a foreign corporation was mistaken as to its qualification status in Alabama at the time it entered into the contracts with the Defendants and the mistake was not the fault of the Defendants.

Accordingly, as the contracts at issue in this case are void as a matter of law, Defendants' Motion is due to be granted as to Plaintiff's breach of contract claim (Count I) against the Individual Defendants. Likewise, Defendants' Motion is due to be granted as to Plaintiff's tortious interference with a contractual relationship claim (Count II) asserted against the Corporate Defendant.

However, Plaintiff's civil conspiracy claim is not solely based on the void contracts, and granting Defendants' Motion as to that claim is inappropriate at this time. Civil conspiracy has been defined as "the combination of two or more persons to do (a) something that is unlawful, oppressive, or immoral; or (b) something that is not unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means; or (c) something that is unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means." *Snyder v. Faget*, 295 Ala. 197, 201, 326 So.2d 113, 116 (Ala. 1976). "It is also established that the gist of the action in civil conspiracy is the wrong committed rather than the conspiracy itself." *Id*. In the instant action, Plaintiff has alleged that the Defendants "engaged in concerted action to achieve the

misappropriation of Plaintiff's proprietary and confidential business information and documents, as well as the breach of the Individual Defendants' Agreements with Plaintiff." (Compl., ¶ 54).  As Plaintiff's claims for violation of the Alabama Trade Secrets Act (Count III) and for conversion (Count IV) remain, it would be improper to dismiss Plaintiff's civil conspiracy claim.

      A separate Order will be entered consistent with this Memorandum Opinion.

      **DONE** this the 27th day of March, 2007.

      **VIRGINIA EMERSON HOPKINS**
      United States District Judge